IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                        No. CR 14-3816 RB

JOSE VALLADOLID,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Defendant raised two objections to his amended presentencing report ("PSR"), one in a docketed brief and one at his sentencing hearing. The Court took both matters under advisement. Having reviewed the parties' submissions and arguments, the Court **OVERRULES** Defendant's written objection (Doc. 32) and **SUSTAINS** Defendant's verbal objection.

**I.    BACKGROUND**

On August 6, 2014, Defendant attempted to cross the border into Mexico at the Port of Entry in Columbus, New Mexico. Signs around the Port of Entry advised travellers that neither firearms nor ammunition are permitted to leave the United States when traveling to Mexico. Customs and Border Patrol agents questioned Defendant at the Port of Entry. After referring Defendant's car to the secondary screening area, Customs and Border Patrol agents found firearms covertly attached to Defendant's car just above the exhaust system. In total, agents discovered two M4 rifles and six ammunition magazines.

After receiving his *Miranda* warnings, Defendant admitted that he had been hired to pick up money and smuggle it across the border. While in Palomas, Mexico, a man named "Surdo" approached Defendant with the job opportunity, which Defendant accepted. Defendant

subsequently drove to Phoenix, Arizona, where he was told that he would be transporting firearms instead of money. Defendant expected to receive $3,000 for smuggling currency, but was unsure how much he would be paid to smuggle firearms.

Defendant accepted the new job assignment even though he knew it is illegal to transport firearms from the United States into Mexico. The contact in Phoenix took the keys to Defendant's car and outfitted the vehicle with the firearms. The next day, Defendant attempted to smuggle the weapons across the border. Before he reached the border, Surdo texted Defendant and warned him against entering Palomas because the Mexican military was patrolling the town. After waiting a few hours, Defendant tried again to deliver the firearms to Surdo, but was thwarted by Customs and Border Patrol.

Defendant, who was previously convicted of a felony drug offense in 1989, was indicted for felony firearm possession (Count 1) and transporting firearms for export (Count 2). (Indictment, Doc. 22.) On December 29, 2014, Defendant plead guilty to Count 1 of the Indictment, felony firearm possession. (Plea Agmt., Doc. 29.) Defendant did not plead guilty to the transport and export charge. In his plea agreement, Defendant admitted that he had attempted to take firearms and ammunition into Mexico and deliver them to another person. (*Id.* ¶ 7.) Defendant admitted these facts even though they were unnecessary to state the elements of the charge to which he pleaded.

In preparation for sentencing, probation disclosed a PSR to the parties. The Government objected to the PSR on the basis that it did not include an offense-level enhancement for trafficking in firearms under United States Sentencing Guidelines section 2K1.2(b)(5). (Doc. 31.) Agreeing with the Government's position, the United States Probation Office revised the PSR to include the four-level trafficking enhancement. (Revised PSR at 5-6, ¶¶ 17-27.)

In turn, Defendant objected to the revised PSR, arguing that the Government presented insufficient evidence to invoke the section 2K1.2(b)(5) enhancement. (Doc. 32.) Recognizing its obligation to present sufficient evidence, the Government proposed to hold an evidentiary hearing during sentencing. (Doc. 33.) The Court held the hearing on July 1, 2015.

At the hearing, the Government presented evidence and sworn testimony from a Border Patrol agent. The evidence showed that Defendant knew that Surdo would use the firearms for an illegal purpose. Additionally, for the first time, Defendant argued that his offense level should be adjusted for his minor role. The Court took both matters under advisement.

## II.  DISCUSSION

The Government and Defendant had two disputes over the PSR. First, the Government seeks a four-level enhancement based on trafficking firearms, while Defendant objects. Second, Defendant seeks a two-level adjustment for his minor role in the unlawful scheme, while the Government objects. At sentencing, the government must prove facts supporting an enhancement while the defendant has the burden to show he is entitled to an offense level reduction. *United States v. Gambino-Zavala*, 539 F.3d 1221, 1228 (10th Cir. 2008) (ruling that the government must prove an enhancement); *United States v. Ayers*, 84 F.3d 382, 383 (10th Cir. 1996) ("[I]t is the defendant's burden to establish by a preponderance of the evidence that he or she is entitled to an offense reduction."). Both parties must prove their arguments by a preponderance of the evidence. *Gambino-Zavala*, 539 F.3d at 1228; *Ayers*, 84 F.3d at 383.

### A. Four-level Firearms Trafficking Enhancement

"If the defendant engaged in the trafficking of firearms," the Sentencing Guidelines increase a defendant's offense level by four points. U.S.S.G. § 2K2.1(b)(5). According to the application note, this enhancement applies if the defendant:

3

> (i) transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and
>
> (ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—
>
>> (I) whose possession or receipt of the firearm would be unlawful; or
>>
>> (II) who intended to use or dispose of the firearm unlawfully.

§ 2K2.1 cmt. 13(A). Defendant admitted that he received two or more firearms with the intent to transport the firearms to another individual within the meaning of section 2K2.1 cmt. 13(A)(i). Defendant intended to give the firearms to Surdo. However, Defendant contends the enhancement does not apply because the Government cannot prove the second prong: that Defendant knew Surdo's possession of the firearms would be unlawful or that Surdo intended to use the firearms unlawfully. (Doc. 32.)

At the hearing, the Government presented testimony from Border Patrol Agent Michael Reilly, an expert on drug trafficking operations in the Chihuahua area. Agent Reilly testified that Palomas, the border city where Defendant was first approached by Surdo, is a known drug trafficking hub. As part of the drug trafficking scheme, drugs are smuggled north into the United States while currency and guns are smuggled south into Mexico. Drug cartels in Mexico use guns, such as the semiautomatic rifles that Defendant carried, to protect their loads of drugs, intimidate local residents in shakedowns, and assassinate rivals. Surdo, the man that Defendant spoke to in person and via text message, is a known plaza boss—or operations manager—for the La Línea cartel in Palomas. La Línea is a violent borderland cartel. Based on the evidence in the case, Agent Reilly opined that Defendant had been hired to smuggle firearms for a drug trafficking organization.

At the hearing, defense counsel conceded that along the border, it is widely known that Mexican cartels are involved in smuggling drugs into the United States and smuggling guns and money into Mexico. Defendant, who lived in a town only three miles from the border, likely knew of this arrangement. Although there is no evidence that Defendant knew that Surdo was a plaza boss for La Línea, Defendant should have recognized the illegal nature of the smuggling activity.

Based on the circumstances, Defendant knew or had reason to know that the firearms were "destined for individuals who would dispose of them unlawfully." *United States v. Garcia*, 635 F.3d 472, 478 (10th Cir. 2011) (finding sufficient circumstantial evidence to support the application of the trafficking enhancement). A court may draw "common-sense inferences from the circumstantial evidence." *Id.* While visiting a known smuggling hub, Defendant was asked by a stranger to smuggle currency into Mexico for a fee of $3,000. Ultimately, instead of currency, Defendant was asked to smuggle semiautomatic firearms and high capacity magazines into Mexico. Instead of merely handing Defendant the package to carry, the contact in Phoenix took two hours to disguise the firearms in the exhaust system of Defendant's car. If nothing else, the "clandestine nature" of these interactions should have given Defendant reason to question the legality of his mission. *Id.* at 479. Moreover, Defendant knew that smuggling guns into Mexico was illegal. If he did not know that fact before crossing the port of entry, signs clearly warning drivers that it is "illegal to carry firearms/ammunition into Mexico" would have tipped him off. Furthermore, Defendant attempted to avoid law enforcement. He waited for hours to make his delivery after Surdo advised him to delay his entry into Palomas because the Mexican military was on patrol.

The Government presented sufficient evidence to show that Defendant had reason to believe that Surdo would dispose of or use the firearms unlawfully. In an effort to inject doubt into the scenario, defense counsel argued the Defendant could have thought the guns were going to righteous vigilantes who take up arms against the cartels. Although this would be a more sympathetic story, the Court finds this alternate explanation unlikely and similarly unlawful. In short, the Court finds by a preponderance of the evidence that (i) Defendant intended to transport firearms to another individual and (ii) Defendant knew or had reason to believe that the individual would dispose of or use the firearms unlawfully. Probation properly applied the four-level enhancement for trafficking firearms and Defendant's objection is overruled.

### B. Two-level Role Mitigation

If a defendant had a minimal or minor role in an offense, the Sentencing Guidelines reduce the offense level by four to two points, respectively. U.S.S.G. § 3B1.2. This section "vests the district court with discretion to grant a base offense level reduction if it finds a defendant is less culpable relative to other participants in a given offense." *United States v. Santistevan*, 39 F.3d 250, 254 (10th Cir. 1994). Because the guideline requires an analysis of relative culpability, this guideline only applies when more than one participant was involved in the criminal offense. *See* U.S.S.G. § 3B1.2 cmt. 2; *United States v. Salazar-Samaniega*, 361 F.3d 1271, 1277 (10th Cir. 2004).

The Government argues that Defendant is ineligible for the role reduction because, as a matter of law, there can be no mitigating role reduction when a single person is charged with the crime of felon in possession of a firearm. In short, the Government argues that because Defendant was sentenced for his own criminal conduct, he is ineligible for a mitigating role reduction. However, the commentary for the guideline provides that:

> The determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), *i.e.*, all conduct included under § 1B1.3(a)(1)-(4), and not solely on the basis of elements and acts cited in the count of conviction.

U.S.S.G. § 3B1 introductory cmt. Relevant conduct includes "all acts and omissions committed [or] aided" by the defendant "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection . . . ." U.S.S.G. § 1B1.3(a)(1). Specifically, the commentary for the mitigating role guideline clarifies, "A defendant who is accountable under § 1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in concerted criminal activity is not precluded from consideration for an adjustment under this guideline." U.S.S.G. § 3B1.2 cmt. 3(A). As an example, the guideline commentary explains that a defendant who is convicted of drug trafficking, but whose offense is limited to "the quantity of drugs the defendant personally transported . . . is not precluded from consideration for an adjustment under this guideline." *Id.*

These guideline sections were amended to address a circuit conflict regarding whether a defendant who was sentenced solely for his own criminal conduct could be eligible for a mitigating role adjustment. *United States v. Hernandez*, 375 F. Supp. 2d 1173, 1181 (D.N.M. 2004). "Prior to the amendment," the Seventh Circuit ruled "that if a defendant, notwithstanding his participation in concerted criminal activity, was sentenced solely for his own criminal conduct and not the conduct of the other participants in the concerted activity, then he was ineligible for a mitigating role reduction." *United States v. Hill*, 563 F.3d 572, 577 (7th Cir. 2009) (collecting cases). The Sentencing Commission's amendment overturned that logic: a defendant who is sentenced solely for his own criminal conduct is not precluded from receiving a mitigating role adjustment. *Id.* at 577-78. "Although this circuit conflict arose in the context of

a drug offense, the amendment resolves it in a manner that makes the rule applicable to all types of offenses." *Hernandez*, 375 F. Supp. 2d at 1181; *United States v. Chavez-Magana*, 238 F. App'x 340, 343 (10th Cir. 2007) ("[W]e do not agree with the government that a defendant who is the only person charged or convicted in connection with a criminal operation is necessarily ineligible for the minor participant adjustment . . . ."). The Seventh Circuit has since ruled that a district court "committed legal error" when it deemed a defendant convicted of felon-in-possession ineligible for the reduction. *Id.* ("[The defendant's] possession of the guns was one step in a longer sequence of events . . . . That context cannot be disregarded in assessing his eligibility for a mitigating role reduction."); *see also United States v. Jacinto*, 168 F. App'x 129, 131 (8th Cir. 2006) (holding that a defendant convicted of a felon-in-possession offense "may be entitled to the § 3B1.2 reduction if the defendant shows (1) the relevant conduct for which he is accountable involved more than one participant, and (2) the defendant's culpability for the conduct was relatively minor compared to the conduct of the other participants").

The Tenth Circuit has long held that "'a sentencing court may consider the underlying scheme, as opposed to merely the offense of conviction, in determining role in the offense adjustments' under Chapter 3, Part B of the sentencing guidelines." *United States v. Harfst*, 168 F.3d 398, 403 (10th Cir. 1999) (finding that a defendant, convicted of possession of methamphetamine with intent to distribute, could be eligible for a mitigating role reduction). Granted, this adjustment does not apply to felon-in-possession defendants where there is no evidence that other participants were involved in some underlying scheme. *See United States v. Whitener*, 80 F. App'x 94, 95 (10th Cir. 2003) (holding that court's denial of mitigating role reduction was not clearly erroneous where there were no other participants); *United States v. Soriano*, 190 F. App'x 694, 696 (10th Cir. 2006) (same). However, the evidence before the

Court in this case shows that Defendant's offense related to an underlying scheme involving multiple participants. For that reason, Defendant is not precluded from seeking a mitigating role reduction under sentencing guideline 3B1.2.

The Court addresses one final consideration. According to the commentary, the mitigating role reduction does not apply when a defendant is convicted of an "offense significantly less serious than warranted by his actual criminal conduct . . . ." U.S.S.G. § 3B1.2 cmt. 3(B). By way of example, the commentary explains that there should be no reduction for a defendant whose conduct involved cocaine distribution with an offense level of 12, where the defendant is convicted of simple possession with an offense level of 6. *Id.* The defendant, the guidelines reason, "is not substantially less culpable than a defendant whose only conduct involved the simple possession of cocaine." *Id.* The Court finds the facts of the present case distinguishable from the example. In the Indictment, the Government characterized Defendant's offense as the attempted export of firearms. (Indictment.) The base offense level for that crime can be as low as 14. U.S.S.G. § 2M5.2(a)(2). Instead, Defendant was convicted of felon in possession, which carries a much higher base offense level of 20. (PSR ¶ 17.) Based on relevant conduct, Defendant received one 4-level enhancement for attempting to leave the United States in possession of firearms and a second 4-level enhancement for firearms trafficking. (PSR ¶¶ 18, 19.) The enhancements increased Defendant's sentencing exposure by 33 to 41 months. Given this context, the Court finds that Defendant did not receive a lower offense level for a less serious offense. As such, the mitigating role reduction may apply to Defendant's offense.

Having found that the role reduction could apply to Defendant's offense, the Court further finds that Defendant is eligible for a two-level decrease for his minor role in the drug trafficking scheme. To determine whether a mitigating role reduction will apply, the district

9

court must weigh "the totality of the circumstances" and make "a determination that is heavily dependent on the facts of the particular case." U.S.S.G. § 3B1.2 cmt. 3(C).  The four-level reduction for minimal participants covers "defendants who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2 cmt. 4.  In comparison, the two-level decrease for "minor" participation applies to individuals who are "less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. 5.

The evidence does not support a finding that Defendant was a minimal participant.  To evaluate whether a defendant played a minimal role, the Court must assess "the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others . . . ." U.S.S.G. § 3B1.2 cmt. 4; *see also United States v. Caruth*, 930 F.2d 811, 812 (10th Cir. 1991) (quoting same).  As found above, Defendant knew or had reason to know that his involvement in the underlying offense was connected to a larger drug trafficking scheme between Mexico and the United States.  Given the nature of Defendant's offense—attempted export of two semiautomatic and several high capacity magazines—as well as the clandestine character of the offense, the Court finds that Defendant had an understanding of Surdo's activities.  *See id.* (affirming district court's determination that the defendant was not a minimal participant where drug transporter had knowledge of the drug organization).  Accordingly, the Court will not characterize Defendant's role as minimal.

The Court does find, in contrast, that the evidence supports a finding that Defendant was a minor participant in the underlying scheme.  Both parties agree that Defendant acted as a mule or courier for Surdo.  *See id.* (finding that couriers may be eligible for mitigating role, depending on the facts).  According to the evidence before the Court, Defendant never previously worked as a courier nor did Defendant have prior communications with Surdo or the contact in Phoenix.

Surdo recruited Defendant to transport currency. During a last minute switch, Defendant was told to transport firearms instead. Defendant himself did not have any authority over how the firearms were to be delivered. All these facts support a finding that Defendant played a minor role in the offense. *Accord United States v. Garcia*, 939 F. Supp. 2d 1216, 1230 (D.N.M. 2013) (finding that a courier played a minor role where she was recruited for the role and did "not have any say or direction" over the smuggling). Based on this finding, Defendant is eligible for a two-level reduction in his offense level pursuant to sentencing guideline 3B1.2(b).

### III.   CONCLUSION

After reading the parties' briefs and hearing oral argument, the Court considered two objections Defendant made to the amended PSR. First, the Court overruled Defendant's objection to the four-level firearms trafficking enhancement, finding that Defendant has reason to believe that the firearms he transported would be disposed of or used unlawfully. Second, the Court sustains Defendant's second objection, finding that Defendant played a minor role in the scheme underlying the offense.

**THEREFORE**,

**IT IS ORDERED** that:

(1) Defendant's Objection to Presentence Investigation Report (Doc. 32) is **OVERRULED**; and

(2) Defendant's request for a two-level reduction for mitigating role is **GRANTED**.

_____
**ROBERT C. BRACK**
UNITED STATES DISTRICT JUDGE